<u>NOT</u> <u>PRECEDENTIAL</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 01-2156
_____

JANE E. SEILER, Administratrix of the Estate of Robert W. Roberts, deceased

Appellant

v.

AMERICAN INTERNATIONAL INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania

District Court Judge: The Honorable William W. Caldwell
(No. 1-CV-00-1792)

_____

Submitted under Third Circuit L.A.R. 34.1(a)
July 22, 2003

Before: ALITO, FUENTES <u>Circuit</u> <u>Judges,</u>
and SURRICK,* <u>District</u> <u>Judge</u>.

(Opinion Filed: August 21, 2003)

---

*Hon. R. Barclay Surrick, U.S. District Judge for the Eastern District of Pennsylvania, sitting by designation.

_____
OPINION OF THE COURT
_____

FUENTES, <u>Circuit</u> Judge:

Jane Seiler ("Seiler") appeals from the District Court's grant of summary judgment to American International Insurance Co. ("American") on her breach of contract claim for failing to pay insurance benefits. The District Court found that an exception in American's insurance policy, commonly referred to as a "household exclusion," did not violate public policy, and, therefore, that American properly refused payment. Because we agree that the "household exclusion" applies to Seiler's claim and does not violate public policy, we will affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 13, 1999, Robert W. Roberts ("Roberts" or "deceased") suffered fatal injuries when the car he was driving was struck head-on by an underinsured drunk driver, Bryan Kolsovsky ("Kolsovsky"). At the time of the collision, Roberts was driving a 1990 Mazda that was owned by his wife, Seiler, because his own car, a 1995 Dodge, was being repaired. Seiler's car was insured by State Farm and Roberts' car was insured by American.

Following the accident and Roberts' death, Seiler filed suit against Kolsovsky in her capacity as Executrix of the Estate of Robert Roberts ("the Estate"), and settled for the policy limit of $50,000. Seiler then obtained the underinsured motorist ("UIM") benefits provided by her State Farm insurance policy for her Mazda, which amounted to $15,000. After Seiler

received UIM benefits from State Farm, she asked American to pay UIM benefits to the Estate pursuant to a stacked UIM coverage policy of $250,000/$300,000 that Roberts had purchased for his Dodge. American denied payment contending that the "household exclusion" foreclosed payment on an accident involving Seiler's car which was not covered under the American insurance policy.

Seiler filed suit against American seeking a declaratory judgment that American was required to pay $250,000.00 in UIM benefits to the Estate. American filed a motion for summary judgment on the ground that it was not obligated to pay those benefits due to the "household exclusion." Seiler cross-moved for summary judgment. The District Court ruled that the household exclusion applied and that its application in this case does not violate public policy. The District Court concluded that Seiler was not entitled to receive benefits from American, and accordingly entered summary judgment in favor of American. This appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

Because the jurisdictional requirements were met, the District Court had jurisdiction over this case pursuant to 28 U.S.C. § 1332. We have jurisdiction over the final order of the District Court pursuant to 28 U.S.C. § 1291.

The standard of review applicable to an order granting summary judgment is plenary. Curley v. Klem, 298 F.3d 271, 276 (3d Cir. 2002). We apply the same test employed by a district court under Federal Rule of Civil Procedure 56(c). See Kelley v. TYK Refractories

Co., 860 F.2d 1188, 1192 (3d Cir. 1988). Accordingly, the District Court's grant of summary judgment in favor of American was proper only if it appears that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In evaluating the evidence, we are required "to view inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Bartnicki v. Vopper, 200 F.3d 109, 114 (3d Cir. 1999) aff'd, 532 U.S. 514 (2000).[1]

### III. ANALYSIS

The insurance policy issued to Roberts by American provides, in pertinent part:

A. We do not provide Underinsured Motorists Coverage for 'bodily injury' sustained:

    1. By you while 'occupying'...any motor vehicle you own which is not insured for this coverage under this policy...

The policy defines "you" as:

    1. The "named insured" shown in the Declarations; and
    2. The spouse if a resident of the same household.

These provisions comprise the "household exclusion."

It is undisputed that this policy language is clear and unambiguous. However, Seiler argues that the policy is inapplicable in her case because its definition of "you," which includes spouses, is inconsistent with that of the Pennsylvania Motor Vehicle Code, 75 Pa.C.S.A. §§ 101 et seq. Seiler contends that American's definition of "you" renders title

---

[1] Because there are no disputed facts in this case and the resolution of the parties' dispute turns on a legal issue, this matter is particularly suited for summary judgment.

to a vehicle irrelevant by providing that an insured is the owner of any vehicle owned by a spouse who resides in the same household (even if an insured is not a co-owner of the spouse's car). Seiler's argument is unpersuasive for two reasons. First, Seiler did not raise this argument in the District Court and thus has not preserved it for our review. Second, even if Seiler had appropriately raised the argument in the District Court, it would not have prevailed because our review of the Motor Vehicle Code suggests that the definition used by American does not conflict with any of the definitions in the relevant chapter of Title 75. Thus, Seiler's first contention is meritless.

Seiler's second and main contention is that the enforcement of the "household exclusion" in her case violates public policy. She supports her position by arguing that the several recent cases upholding "household exclusions" as not violative of public policy are distinguishable from her case. She claims that her situation is unlike those in other cases because Roberts actually paid for the policy under which Seiler is seeking underinsurance benefits and because both of the cars in the household had some level of UIM coverage. See Appellant's Br., pp. 18-23 (citing Prudential Prop. & Cas. Ins. Co. v. Colbert, 572 Pa. 82, 813 A.2d 747 (2002); Eichelman v. Nationwide Ins. Co., 551 Pa. 558, 711 A.2d 1006 (1998); Hart v. Nationwide Ins. Co., 541 Pa. 419, 663 A.2d 682 (1995); Windrim v. Nationwide Ins. Co., 537 Pa. 129, 641 A.2d 1154 (1994)). Because her case presents a distinct factual scenario, Seiler argues that we are not bound by the prior decisions finding no public policy violation. Seiler further contends that under the present factual scenario, the application of

the "household exclusion" is a public policy violation. She identifies the public policy at stake as, "...that which underlies UIM coverage under the MVFRL [Motor Vehicle Financial Responsibility Law], that is 'to protect the insured (and his additional insureds) from the risk that a negligent driver of another vehicle will cause injury to the insured (or his additional insureds) and will have inadequate insurance coverage . . . .'" Appellant's Br., p. 25 (quoting Paylor v. Hartford Ins. Co., 536 Pa. 583, 587, 640 A.2d 1234, 1235-36 (1994)).

Seiler's assertion that the present case is factually distinct from prior cases is incorrect. Indeed, several decisions finding no public policy violation have involved situations where the insured actually paid for the coverage sought, just as in this case. See, e.g., Burstein v. Prudential Prop. & Cas. Ins. Co., 570 Pa. 177, 809 A.2d 204 (2002); Old Guard Ins. Co. v. Houck, 2002 Pa. Super 161, 801 A.2d 559 (2002) appeal denied, 572 Pa. 758, 818 A.2d 505 (2003); Nationwide Mut. Ins. Co. v. Ridder, 105 F.Supp. 2d 434 (E.D. Pa. 2000). Furthermore, the District Court correctly determined that Seiler's argument is rendered unpersuasive by Troebs v. Nationwide Ins. Co., 1999 WL 79555 (E.D. Pa. 1999). In that case, the court noted that the same considerations apply to motorists who purchase insufficient coverage as do to those who fail to purchase any coverage. See id. at 4. However, even if we found that the case at hand were factually distinct from prior cases, this would not necessarily lead us to the conclusion that upholding the "household exclusion" in this case violates public policy.

The standard set by the Pennsylvania courts for determining whether a contract

provision violates public policy is very high:

> It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in [declaring what is or is not in accord with public policy].

Paylor, 536 Pa. at 587, 640 A.2d at 1235 (quoting Mamlin v. Genoe, 340 Pa. 320, 325, 17 A.2d 407, 409 (1941)).  Public policy is to "be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest."  Id. at 586-87, 640 A.2d at 1235 (quoting Guardian Life Ins. Co. of America v. Zerance, 505 Pa. 345, 354, 479 A.2d 949, 954 (1984)).

While the Pennsylvania Supreme Court has held that the enforceability of "household exclusions" is dependent on the facts surrounding each case, courts have routinely upheld them in the face of public policy challenges.  See, e.g., Paylor, 536 Pa. at 595, 640 A.2d at 1240 (finding no public policy violation where insurance company refused to provide daughter of deceased parents involved in a motor home accident UIM benefits from couple's insurance policies that did not cover motor home); Eichelman, 551 Pa. at 567-68, 711 A.2d at 1010 (finding no public policy violation where insurance company refused to provide driver without UIM benefits similar benefits under other family members' policies); see also Ridder, 105 F.Supp. 2d at 438 (finding no public policy violation where insurance company refused to provide uninsured motorist benefits from defendant's policies that did not cover the motorcycle involved in the accident); Ridley ex rel. Ridley v. State Farm Mut. Auto. Ins. Co., 745 A.2d 7, 14 (Pa. Super. Ct. 1999) (finding no public policy violation where insurance

company refused to provide UIM benefits from family policy that did not cover the car involved in the accident) appeal denied, 572 Pa. 708, 813 A.2d 843 (2002). Thus, as is required when determining whether a contract provision violates public policy, we must conclude that there is no unanimity of opinion that "household exclusions" violate public policy.

We must next examine whether the "household exclusion" is obviously against public policy. This Court cannot discern how American's "household exclusion" is so obviously against the public health, safety, morals, or welfare of Pennsylvania's citizens as to be violative of public policy. Seiler has not convinced us that the public policy at stake that she identifies, that of protecting insureds from the risk of being involved in an accident with an underinsured person, is obviously violated by upholding the "household exclusion." Accordingly, the District Court correctly determined that pursuant to Ridder and other recent decisions, the application of the "household exclusion" in this case does not violate public policy.

In reaching that determination, the District Court rightfully focused on laws and legal precedents surrounding the "household exclusion" rather than general notions of public interest. In this regard, it is critical that the Motor Vehicle Financial Responsibility Law, Pa. Stat. Ann. tit. 75, §§ 1701-1799.7 (1996) ("MVFRL"), which requires insurance companies to offer uninsured motorist ("UM") and UIM coverage, 75 Pa. C.S.A. § 1731(a), was enacted out of concern for the "spiralling consumer cost of automobile insurance." Paylor, 536 Pa.

8

at 587, 640 A.2d at 1235.

The District Court also rightfully focused on the Ridder decision because the Ridder court upheld a "household exclusion" as not violative of public policy in a situation very similar to the one at hand. In that case, Thomas Ridder's ("Ridder") motorcycle collided with an uninsured vehicle. After receiving the full UM benefits from his motorcycle's policy with Nationwide Mutual Insurance Co. ("Nationwide"), he attempted to obtain UM benefits from the policies covering his other vehicles because they provided significantly higher UM benefits. The court, in granting Nationwide's motion for summary judgment, stated:

> [W]hile it is clear that the plaintiff here did obtain minimal uninsured motorist coverage on his motorcycle, he could have elected higher limits. He chose not to obtain this additional coverage and for this he paid a lower premium. The Nationwide policies were written for specific vehicles and it was for this coverage that Nationwide and the defendant bargained and ultimately contracted. To require Nationwide to pay uninsured motorist benefits on its policies would be to effectively require it to underwrite a risk of which it likely had no knowledge and for which it neither contracted nor was paid.

Ridder, 105 F.Supp 2d at 438 (citations omitted).

Just as in Ridder, Seiler chose the benefits for the Mazda that the deceased was driving at the time of the accident. Like her deceased husband, she could have chosen significantly higher UIM coverage and accordingly could have paid higher premiums, but she did not. To require American to pay UIM benefits in this instance would require the company to underwrite a risk for which it had not contracted. This would allow a policy holder to receive benefits far in excess of that for which she paid. Consequently, insurers would be forced to raise insurance costs, thwarting the legislative intent behind the MVFRL.

See Prudential Prop. and Cas. Ins. Co. v. Colbert, 572 Pa. 82, 813 A. 2d 747, 754 (2002); see also Rupert v. Liberty Mutual Ins. Co., 291 F.3d 243, 249 (3d Cir. 2002). Such a result would defeat public policy rather than advance it. Accordingly, we find no public policy violation in enforcing the exclusion under the facts presented in this case.

### III. CONCLUSION

For the reasons set forth above, the District Court was correct in finding that the household exclusion provision was not violative of public policy. Accordingly, we will affirm the District Court's decision in granting summary judgment to American.

_____
TO THE CLERK OF COURT:
Kindly file the foregoing opinion.

        By the Court,

        /s/ Julio M. Fuentes
        Circuit Judge